1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUSTIN NEIL FLOCCHINI,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. 1:24-cv-01246-EPG

FINAL JUDGMENT AND ORDER
REGARDING PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(ECF Nos. 1, 16).

19

20

21

22

23

24

25

26

27

28

This matter is before the Court on Plaintiff's complaint for judicial review of an

unfavorable decision by the Commissioner of the Social Security Administration regarding his

application for disability and supplemental security income benefits. The parties have consented

to entry of final judgment by the United States Magistrate Judge under the provisions of 28

U.S.C. § 636(c)(1), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

     Plaintiff presents the following issues:

     1.  Whether the ALJ harmfully erred by failing to find MDIs of mental impairments
         due to chronic pain to be not "severe" impairments at step Two; rejecting the
         multiple MSS of record documenting "moderate" and more than moderate
         functional limitations as assessed by the treating source and consultative examiner,
         absent substantial evidence and failing to account for Mr. Flocchini's severe

1

symptomology resulting from his MDIs of depression and anxiety disorder in the RFC assessment.

  a.  Whether the ALJ harmfully erred by failing to find the MDIs of depression and anxiety disorder due to chronic pain and limitation to be "severe" impairments at step Two and failing to consider these limitations in the RFC.

2.  Whether the ALJ committed harmful error by failing to provide the requisite "clear and convincing" reasons for rejecting psychological symptomology evidence.

After review of the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

## I.  ANALYSIS

### a.  Whether the ALJ erred at Step Two by failing to find MDIs of depression and anxiety disorder due to chronic pain

Plaintiff argues that the ALJ erred at Step Two by failing to find MDIs of depression and anxiety disorder resulting from chronic pain were not severe.

If a claimant has a medically determinable impairment (MDI), the ALJ must determine whether the impairment is severe, which is referred to as Step Two. 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* "Basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, remembering simple instructions, and responding appropriately to supervision. 20 C.F.R. 416.922(b).

The Court looks to whether the ALJ's finding at step 2 is supported by substantial evidence.  *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) ("applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments.").  Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

1        For mental impairments, the ALJ considers four broad functional areas to rate the degree

2    of any functional limitations, specifically, the ability to: (1) understand, remember, or apply

3    information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or

4    manage oneself. § 416.920a(c)(3).

5        At Step Two, the ALJ found that Plaintiff's Chiari Malformation Type I status-post

6    surgery; cervicalgia/cervical spine degenerative disease/annular tears/spondylosis; migraines; and

7    occipital neuralgia to be severe impairments. (20CFR 404.1520(c) and 416.920(c)). (A.R. 20).

8    However, the ALJ found that "[t]he claimant's medically determinable mental impairments of

9    generalized anxiety disorder, attention deficit hyperactivity disorder, major depressive disorder

10   and adjustment disorder, considered singly and in combination, do not cause more than minimal

11   limitation in the claimant's ability to perform basic mental work activities and are therefore

12   nonsevere."  (A.R. 20).

13       Plaintiff raises several challenges to this conclusion.

14                    i.   **Whether the ALJ harmfully erred in considering the severity of**

15                         **Plaintiff's mental impairments in step 2**

16       Plaintiff first argues that "[t]he ALJ's 'analysis' of opinion evidence and objective

17   medical evidence of record establishing Mr. Flocchini's diagnoses of depressive disorder and

18   anxiety disorder at Step Two of the sequential evaluation is misplaced. In fact, it is well

19   established in SSA case law that Step Two is not the proper place for the ALJ's 'analysis' of the

20   of the symptomology or limitations of an established medically determinable impairment (MDI)."

21   (ECF No. 16, p. 16).  In support, Plaintiff quotes from the Ninth Circuit case of *Edlund v.*

22   *Massanari* (9th Cir. 2001) 253 F.3d 1152, 1158, *as amended on reh'g (Aug. 9, 2001)*, which

23   found that the ALJ's erred in finding that the claimant did not suffer from severe mental

24   impairment at step 2, in part because the ALJ already found other impairments to be severe.

25   (ECF No. 16, at p. 24, citing *Edlund v. Massanari* (9th Cir. 2001) 253 F.3d 1152, 1158, *as*

26   *amended on reh'g* (Aug. 9, 2001) ("'Important here, at the step two inquiry, is the requirement

27   that the ALJ must consider the combined effect of all of the claimant's impairments on h[is]

28   ability to function, without regard to whether each alone was sufficiently severe.' *Id.* Given the

1  uncontroverted diagnosis of the examining psychologist, Dr. Bremer, as to Edlund's symptoms of

2  agitated depression and anxiety, we believe the ALJ lacked substantial evidence for dismissing

3  Edlund's claim of a severe mental impairment at Step 2.").

4        In response, the Commissioner argues that any error in evaluating the severity of

5  Plaintiff's mental impairments at step 2 was harmless because the ALJ found other impairments

6  to be severe and considered all of Plaintiff's impairments in formulating the residual functional

7  capacity (RFC).  (ECF No. 21, p. 6).

8        The Court agrees with the Commissioner.  Here, the ALJ proceeded past step 2 to the

9  further steps of the analysis and "considered all of the claimant's medically determinable

10 impairments, including those that are not severe, when assessing the claimant's residual

11 functional capacity."  (A.R. 20).  *See also* 20 C.F.R. § 404.1545 ("If you have more than one

12 impairment. We will consider all of your medically determinable impairments of which we are

13 aware, including your medically determinable impairments that are not "severe," as explained in

14 §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

15       The Court also finds no harmful error in the ALJ addressing the evidence and medical

16 opinions related to mental impairments in Step 2 instead of in later steps, so long as that analysis

17 is supported by substantial evidence and is consistent with the ALJ's conclusions in later steps,

18 including the RFC.

19            **ii.   Whether the ALJ erred in finding the opinion of Nurse Practitioner**

20                 **Cromwell to be not persuasive**

21       Plaintiff next argues that the ALJ erred in "reject[ing] long-term treating NP Cromwell's

22 2024 mental assessment finding more than minimal limitation on Mr. Flocchini's ability to

23 psychiatrically function due to pain and side effects of medication."  (ECF No. 16, p. 16).

24       In response, the Commissioner argues that "[t]he ALJ reasonably found N.P. Cromwell's

25 opinion unpersuasive based on the supportability and consistency factors," (ECF No. 21, p. 13),

26 and "Plaintiff's argument is nothing more than an overt invitation to the Court to reweigh the

27 evidence and supplant the ALJ's interpretation and conclusion with his preferred, competing

28 interpretation and conclusion."  (ECF No. 21, p. 9).

1    Plaintiff applied for benefits in January 2022, so certain regulations concerning how ALJs

2    must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20

3    C.F.R. §§ 404.1520c, 416.920c. (A.R. 17). These regulations set "supportability" and

4    "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20

5    C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the regulations eliminate the "physician

6    hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a

7    medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"

8    and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-

9    (b); 416.920c(a)-(b).  Moreover, "the decision to discredit any medical opinion, must simply be

10   supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). In

11   conjunction with this requirement, "[t]he agency must 'articulate . . .. how persuasive' it finds 'all

12   the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain

13   how [it] considered the supportability and consistency factors' in reaching these findings, *id.* §

14   404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

15   The ALJ addressed N.P. Cromwell's opinion in connection with step 2's determination of

16   severe impairments and again in connection with step 4's determination of the RFC.  In step 2,

17   the ALJ stated:

18       I find the opinion of Kerry Cromwell, a nurse practitioner, unpersuasive (63F).
19       There is a March 2024 mental residual functional capacity assessment by Kerry
         Cromwell, a nurse practitioner at the claimant's primary care office, that is not
20       based on mental impairments but rather pain from the claimant's Chiari
         malformation (63F). The following limitations were assessed: precludes
21       performance for 10% of an 8-hour workday was found for remembering locations
         and work-like procedures, understanding/remembering/carrying out detailed
22       instructions, asking simple questions/requesting assistance, getting along with
         coworkers and peers without distracting them, and maintaining socially
23       appropriate behavior/adhering to basic standards of neatness and cleanliness.
24       Additionally, precludes performance for 15% of an 8-hour workday was found for
         maintaining attention and concentration for extended periods of time, performing
25       activities within a schedule, maintaining regular attendance, being punctual and
         within customary tolerances, completing a normal workday/week without
26       interruptions from psychologically based symptoms, performing at a consistent
         pace without an unreasonable number and length of rest periods, interacting
27       appropriately with the general public, and traveling in unfamiliar places or using
28

5

1
2
3
4
5

public transportation. Further, it was assessed that the clamant would miss work and be unable to complete a normal workday 5 or more days per month. Although the form requested explanations for the answers provided, this opinion is not supported by any objective evidence, including the nurse practitioner's own, and the nurse practitioner did not cite to any specific reasons for these significant restrictions. Her only explanations were the following vague responses: "pain", "pain and conditions", "pain and medical conditions" or just restating the same words used in the question for her response.

6
7
8
9

This opinion is significantly inconsistent with the foregoing medical evidence and opinions regarding the claimant's mental functioning, which even if not stated, took pain into account because the claimant alleges daily pain so it would have been present at the time of the mental status examinations in treatment notes and consultative psychological evaluations.

10

(A.R. 20-21).  In connection with step 4, the ALJ stated:

11
12
13
14
15
16
17

I find this opinion [by NP Cromwell] unpersuasive and is not supported by and not consistent with the objective medical findings, such as unremarkable diagnostic imaging and physical examinations throughout the record. For example, at examination performed in February 2024 revealed the following objective findings: limited range of motion of the cervical spine due to pain, upper extremity strength 5/5, bilaterally, decreased sensation at C8, bilaterally, and 2+ deep tendon reflexes (DTR) (67F/29-30; see also 67F/4, 10-11, 17-18, 23-24). Another example is an examination in January 2021 which indicated the following objective findings: normal range of motion of the neck, negative straight leg raise test, normal sensation, normal motor strength, bilaterally, 2+ reflexes and normal upper and lower extremity joints (60F/3).

18
19
20
21
22
23
24

Also, NP Cromwell's opinion is not supported by and not consistent with her own treatment notes. For example, the claimant was examined by NP Cromwell in December 2023 (65F/9). NP Cromwell described the claimant in no distress, well appearing, awake, oriented, normal affect and good judgment. NP Cromwell noted that the claimant's depression and anxiety score were negative or minimal and characterized claimant's major depressive disorder as mild (65F/10-11). Such findings are inconsistent with her statement that the claimant's pain and symptoms exacerbate his behavioral condition. These findings are also inconsistent her statement that the claimant had difficulty with train of thought and completing tasks and routines (64F/1,4; see also 63F/2).

25
26
27
28

Although NP Cromwell is a treating source opinion, her limitations and restrictions are inconsistent with the objective clinical and diagnostic findings. I find the consultative examiner's opinion (44F) more persuasive because it is based on an extensive physical examination and consistent with the medical evidence. In contrast, Nurse Cromwell's physical examinations were very brief and consistently unremarkable such that her opinion here is overwhelmingly different than her

  
1

2

> treatment notes except for the claimant's documented subjective complaints indicating this opinion is based primarily on the subjective evidence.

3    (A.R. 30-31).

4    Plaintiff first argues that the ALJ erred in considering NP Cromwell's opinion because it

5    ignored the relationship between pain and mental impairments, citing *Lester v. Chater,* 81 F.3d

6    821, 829-830 (9th Cir. 1995) ("the medical experts appear to agree that the part of his limitations

7    arising from his physical impairment—acute pain—cannot easily be segregated from the part

8    arising from his mental impairments. Lester's condition, which the medical advisor referred to as

9    'chronic pain syndrome,' has both a physical and psychological component").

10    In response, the Commissioner argues that the "ALJ properly found that N.P. Cromwell's

11    mental residual functional capacity assessment was not based on mental impairments (such as

12    depression) but rather pain from Plaintiff's Chiari malformation diagnosis." (ECF No. 21, at p.

13    14).  The Commissioner also argues that "the ALJ's assessment of the medical opinions and

14    findings took into account Plaintiff's pain as well as specific psychological limitations from

15    mental impairments because as the ALJ acknowledged Plaintiff's alleged daily pain would have

16    been present during treatment, mental status examinations, and consultative psychological

17    evaluations." (ECF No. 21, at p. 15).  And, the Commissioner argues that the ALJ's findings as

18    to NP Cromwell as a whole were supported by substantial evidence.

19    It is true that, in determining that Plaintiff's mental impairments were not severe at step 2,

20    the ALJ noted that the limitations NP Cromwell found were "not based on mental impairments

21    but rather pain from the claimant's Chairi malformation." (A.R. 22).  However, the Court need

22    not determine whether substantial evidence supports this statement because it did not affect the

23    ALJ's ultimate conclusion.  The ALJ's opinion addressed all of Plaintiff's mental symptoms,

24    without regard to whether they stemmed from a mental impairment or pain.

25    For example, in connection with step 2, the ALJ evaluated the objective medical evidence

26    regarding Plaintiff's mental symptoms, without regard to whether they stemmed from a mental

27    impairment or pain, including in the following discussion:

28    > The August 2021 psychological consultative examination performed by G.

Seward, PsyD, showed independence with activities of daily living, including preparing meals and doing light household chores, normal appearance, good grooming, friendly, good eye contact, normal facial expressions, appropriate interaction, alert, oriented x4, normal speech, good mood, full range affect, adequate attention and concentration, adequate fund of knowledge, adequate memory, adequate abstraction and similarities, adequate insight and judgment, linear thought process, normal thought content and denial of hallucinations and delusions (23F/3-4). . . .

Treatment notes reflected that the claimant's depression was mild and controlled with medication and stress management (18F/2; 20F/1-2; 25F/1-3; 27F/1-2; 30F/1, 4; 33F/2; 42F/1, 3; 47F/1-3; 48F/1; 51F; 57F/1; 62F/18, 21, 28, 30, 32; 65F/10-11). In March 2022, it was noted that he denied exacerbations and suicidal ideation, he was overall doing well, he denied side effects of medication, he was currently working and physically active, which helped with depression relief, and he had a normal mood and affect (42F/1-2). . . . In March 2023, he had normal speech, goal directed and logical thought process, and was appropriately interactive (62F/23). In February 2024, he had an appropriate affect and he was alert and oriented x3 (67F/29). . . .

The claimant underwent yet another psychological consultative examination in April 2022 performed by J. Card, PsyD, and it reflected no issues as to presentation, grooming, behavior, concentration, interaction, eye contact, facial expressions, attitude, stream of mental activity, content of thought, mood, orientation, memory, fund of knowledge, abstractions, similarities, calculations and judgment and insight (45F/3-5). Claimant also reported being able to cook, prepare sandwiches, use the microwave, and shower; being on the Dean's list in school and not being in special education (45F/3).

(A.R. 20-22).  Because the ALJ did not ignore any mental symptoms on the basis that they stemmed from pain rather than a mental impairment, the ALJ's opinion as to the source of those symptoms did not affect the ALJ's decision in this case.

Plaintiff next argues that "the record is replete with objective evidence that Mr. Flocchini suffers from chronic pain resulting from his 'severe' impairments . . .." (ECF NO. 16, at p. 19). But while Plaintiff goes on to cite evidence that supports a different conclusion, Plaintiff does not address the reasons the ALJ provided for finding NP Cromwell's opinion unpersuasive.  Plaintiff also not address the medical opinions that differed from NP Cromwell's opinion and supported the ALJ's conclusion.  While Plaintiff may disagree with the ALJ's evaluation of the evidence, this is not a basis to reverse the ALJ's decision.  *Ahearn v. Saul* 988 F.3d 1111, 1115–1116 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ. The

1    ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

2    resolving ambiguities.  When the evidence can rationally be interpreted in more than one way, the

3    court must uphold the ALJ's decision.") (internal citations and quotations omitted).

4        Plaintiff also argues that the Appeals Council erred in rejecting new evidence submitted

5    from NP Cromwell, and that the new evidence demonstrates that the ALJ's findings regarding NP

6    Cromwell's opinion was not supported by substantial evidence.  (ECF No. 16, p. 24).  Plaintiff

7    points to notes from treatment by N.P Cromwell that occurred between May 31, 2024, and July

8    21, 2024, including the following:

> For example, this evidence consists of a treatment note from NP Cromwell dated
> May 31, 2024, documenting Mr. Flocchini's depressive screening; his PHQ-9
> score was 17, indicative of moderately severe depression (AR 88); that He
> reported that he continues to have persistent pain, affecting ADL, mood, and
> quality of life. (AR 95); that he has no improvement with previous oral medication
> therapy, including Gabapentin, Tricyclic antidepressants, SSRI, and opiate therapy
> (AR 95); that Mr. Flocchini reported continued depression, exacerbated by pain,
> current medical issues, and lack of sleep and that examination findings document
> limited cervical spine rotation due to pain. (AR 96); and a follow-up treatment
> note from NP Cromwell, dated July 10, 2024, documents Mr. Flocchini's reported
> complaints of "weight low" with intermittent abdominal bloating and constipation
> and intermittent lower abdominal pain and rectal pain (AR 93); that He noted that
> he was "at the end of my rope" in regards to his pain, noting that injection therapy
> provided 20% relief for a few days and back to 100% pain (AR 93); and that he
> was assessed with weight loss, irritable bowel syndrome, and cervical disc disorder
> at C5-6 level with radiculopathy. (AR 94).

19   (ECF No. 16, p. 24).

        In response, the Commissioner argues that the records submitted to the Appeals Council

20   do not deprive the ALJ's decision of substantial evidence because "the evidence in these new

21   records simply reflect subjective symptom complaints and treatment notes consistent with

22   evidence in the record that the ALJ reviewed in making his determinations."  (ECF No. 21, p. 16).

23   The Commissioner also points to several records that support the ALJ's conclusion, including the

24   following:

> For example, on July 10, 2024, Plaintiff's depression screening score was 0,
> indicative of not being depressed (AR 89, 93-94). Furthermore, on June 3, 2024,
> Plaintiff reported "nervousness, depression" in the review of symptoms, yet during

1

2

3

4

> the exam he was found to have "appropriate affect, alert and oriented to person.
> Place and time" (AR 81-82). Additionally, during his May 31, 2024, family
> medicine appointment with N.P. Cromwell, his depression was at baseline and
> controlled with stress management; he declined further medication or behavioral
> health options; pursuant to examination was found to have "normal affect, good
> judgement"; and his overall assessment was still mild depression (AR 96-97).

5

(ECF No. 21, at p. 16).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

After considering the evidence, including evidence submitted to the ALJ, the Court finds that the ALJ's opinion is supported by substantial evidence. The ALJ's decision was supported by medical evidence indicating that Plaintiff's depression was mild and controlled with medication and stress management, that Plaintiff's physical activity aided his depression relief, and that overall he was doing well. (A.R. 602 ("no distress, well appearing, well developed . . . mild depression")); (A.R. 613 ("Depression—improved with start of Lexapro, continues to control depression with medication and stress management. . . . Currently working, physically active—which also aides depression relief.")); (A.R. 626 ("Depression-at baseline, continues to control depression with medication and stress management.")); (A.R. 628 ("Mild depression . . . increase Lexapro to 10mg daily. Declined therapy at this time.")); (A.R. 631 ("Depression—at baseline, continues to control depression with medication and stress management. . . . Overall doing well. Currently working, physically active—which also aides depression relief.")); (A.R. 632 ("Mild depression . . . Improved. Continue Lexapro 10mg daily"); (A.R. 795 ("Depression-at baseline, continues to control depression with medication and stress management. . . . Overall doing well. Currently working, physically active—which also aides depression relief.")); (A.R. 882 ("Depression—at baseline, continues to control depression with stress management. . . . Has been seeing BH via VV, states has helped. Declines medication.")); (A.R. 1199 ("Depression—at baseline, continues to control depression with stress management. . . . Overall doing well.")). The ALJ's opinion was also supported by the opinion of consultative examiner J. Card, as well as the prior administrative medical findings of the State Agency psychological consultants (E. Campbell, Ph.D. (initial), H. Amado. M.D. (reconsideration).

27

\\\

28

\\\

1

2

**iii.   Whether the ALJ erred in finding Dr. G. Seward's opinion to be**

**unpersuasive**

3       Plaintiff next argues that the ALJ's rejection of consultative examiner Dr. Seward's

4   opinion was not supported by substantial evidence.  (ECF No. 16, at p. 24).

5       The ALJ considered Dr. Seward's opinion and found it to be unpersuasive, as follows:

6

7

8

9

10

11

12

13

14

15

16

17

I find the opinion of Dr. G. Sweard, the psychological consultative examiner to be
unpersuasive (23F).  The August 2021 psychological consultative examination
performed by G. Seward, PsyD, showed independence with activities of daily
living, including preparing meals and doing light household chores, normal
appearance, good grooming, friendly, good eye contact, normal facial expressions,
appropriate interaction, alert, oriented x4, normal speech, good mood, full range
affect, adequate attention and concentration, adequate fund of knowledge,
adequate memory, adequate abstraction and similarities, adequate insight and
judgment, linear thought process, normal thought content and denial of
hallucinations and delusions (23F/3-4).  The claimant's test scores on the WAIS-
IV were within the average range of intellectual functioning, and his full-scale IQ
score was 88 or low average (23F/5-6).  The diagnosis was mild major depressive
disorder (23F/6).  Mild workplace limitations were assessed except for two
outliers, a moderate limitation with ability to complete a normal workday or
workweek without interruptions from a psychiatric condition and a moderate
limitation with ability to deal with the usual stresses encountered in a competitive
work environment (23F/6-7).  I find that the moderate limitations are not supported
by the diagnosis of mild depression, the claimant's reported daily activities and it
is not consistent with other evidence in the record, such as the following.

18

19

20

21

22

23

24

25

Treatment notes reflected that the claimant's depression was mild and controlled with
medication and stress management (18F/2; 20F/1-2; 25F/1-3; 27F1-2; 30F/1,4; 33F/2;
42F/1, 3; 47F/1-3; 48F/1; 51F; 57F/1; 62F/18, 21, 28, 30, 32; 65F/10-11). In March 2022,
it was noted that he denied exacerbations and suicidal ideation, he was overall doing well,
he denied side effects of medication, he was currently working and physically active,
which helped with depression relief, and he had a normal mood and affect (42F/1-2).
Depression was assessed as mild and he was instructed to continue his current medication
regimen and behavioral health appointments (42F/2). In March 2023, he had normal
speech, goal directed and logical thought process and was appropriately interactive
(62F/23). In February 2024, he had an appropriate affect and he was alert and oriented
x3(67F/29).

(A.R. 21).

26

27

       Plaintiff argues that the ALJ's finding is not supported by substantial evidence.  Plaintiff

argues that Dr. Seward diagnosed Plaintiff with "mild" major depressive disorder, rather than

28

1    mild depression, and the ALJ's failure to discern this key difference is harmful (ECF No. 16, p.

2    26, citing A.R. 623). Furthermore, Plaintiff also argues that Dr. Seward's medical opinion is

3    supported by Dr. Sewards's documentation of Plaintiff's symptoms, that Plaintiff's average

4    intelligence is not a basis to reject Dr. Seward's opinion, and that Plaintiff's reported depression

5    and anxiety occur on a daily basis and the severity of those symptoms are in mild to moderate

6    range (ECF No. 16, p. 27).

7         In response, the Commissioner argues that the ALJ's opinion is supported by substantial

8    evidence, including "evidence and examination findings that reflected that Plaintiff's depression

9    was mild and controlled with medication and stress management." (A.R. 21, citing 602, 613-614,

10   626-628, 631-632, 644, 647, 652, 795, 797, 817-819, 821, 825, 882, 1123, 1126, 1128, 1133,

11   1135, 1137, 1199-1200, 1265).

12        The Court finds that the ALJ's finding regarding Dr. Seward's opinion is supported by

13   substantial evidence.  Numerous records indicated that Plaintiff's depression was mild and

14   controlled with medication and stress management (A.R. 21, citing 602, 613-614, 626-628, 631-

15   632, 644, 647, 652, 795, 797, 817-819, 821, 825, 882, 1123, 1126, 1128, 1133, 1135, 1137, 1199-

16   1200, 1265). Moreover, the ALJ properly considered and discussed the factors of supportability

17   and consistency. Specifically, Plaintiff's own reported testimony that he was able to partake in

18   daily activities is inconsistent with Dr. Seward's finding of moderate limitations in the ability to

19   complete a normal workday without interruptions from Plaintiff's psychiatric conditions.

20   (A.R.21, citing 623-624). Further, the ALJ found that Dr. Seward's findings were inconsistent

21   with Dr. J Card's April 2022 examination, which found that Plaintiff reported being able to

22   "cook, prepare sandwiches, use the microwave, and shower…" (A.R. 21, citing A.R. pp. 811-

23   813).

24        **b.  Whether the ALJ erred by failing to sufficiently consider Plaintiff's**

25            **Subjective Symptoms**

26        Plaintiff next argues the ALJ failed to provide "clear and convincing" reason for rejecting

27   Plaintiff's subjective symptoms. (ECF No. 16, p. 30).

28        As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

1
2
3
4
5
6
7

> Once the claimant produces medical evidence of an underlying impairment, the
> Commissioner may not discredit the claimant's testimony as to subjective
> symptoms merely because they are unsupported by objective evidence. *Bunnell v.*
> *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*,
> 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit
> excess pain testimony solely on the ground that it is not fully corroborated by
> objective medical findings"). Unless there is affirmative evidence showing that the
> claimant is malingering, the Commissioner's reasons for rejecting the claimant's
> testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687
> (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify
> what testimony is not credible and what evidence undermines the claimant's
> complaints.

8

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

9
10
11
12
13
14
15
16
17
18
19

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard."). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

20
21
22
23
24

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 25). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

25

The ALJ summarized Plaintiff's testimony about his subjective symptoms as follows:

26
27
28

> The claimant has alleged the following complaints and symptoms (Hearing
> Testimony; 6E, 9E) which is not fully consistent with the record as discussed later
> in this decision.  He has not worked since September 1, 2020.  Pain and discomfort
> prevent him from working.  He has numbness that radiates from the back left-side

of his head down to his shoulders and left hand.  He drops things from his left hand due to numbness and tingling.  He denied weakness.  He has headaches that occur once per week and last a couple of days even with medication.  During which time, he is "bedridden."  He said he had "constant" headaches prior to surgery.  Most medications have not helped his headaches except for Ibuprofen and muscle relaxers.  He claims to have side effects from medication of lightheadedness and drowsiness, but he said he was mostly awake during the day.  He gets treatment for neck pain and has limited range of motion.  He turns his body to look to the side in order to lessen the pull on the nerve that he said is causing his neck pain.  He sometimes has discomfort with holding his head in a fixed position.  He spends most of the day reclined or laying down because these positions support his neck.  He does not cook or grocery shop but does some cleaning.  He leaves the house to attend doctor appointments and visit his brother or a friend, which he does less than once per month.  His neck makes driving more difficult.

(A.R. 25).

The ALJ then reviewed the medical evidence and stated:

In sum, the claimant alleges disability based mainly on severe pain caused by his Chiari malformation, migraines and cervical spine condition. While I find the claimant does have pain and decreased cervical range of motion that limits him, the overall medical evidence does not support the level of pain and limitations alleged by the claimant.  The objective medical evidence such as diagnostic imaging and physical examinations are inconsistent with the extremely high level of pain, including migraines, alleged.  Moreover, there was only one notable ER visit for pain, yet he characterizes his pain as typically 8-10/10.  There is also very little treatment from a neurologist, physical therapy and pain management sought for supposedly disabling impairments."

(A.R. 30).

In addition, the ALJ reviewed functions reports completed by Plaintiff and his

mother, also giving those reports consideration.

There were reports that the claimant was limited by pain but was able to do activities of daily living such as cook, light household chores, go out, etc. (9E). It appears his parents offer to do things for him but compared to medical evidence and statements by claimant elsewhere as to his daily activities, there is no medical need for assistance with activities of daily living (4E). While dizziness is mentioned in 4E, there were rare, if any, reports of it in the record, which primarily focused on pain and is accounted for by the above residual functional capacity. I find the claimant's testimony and statements (6E; 9E) and third party statement (4E) relating to the symptoms and limitations experienced by the claimant are not consistent with and not supported by the objective clinical and diagnostic findings.

(A.R. 32).

1    The ALJ also addressed Plaintiff's symptom testimony in connection with Plaintiff's

2 mental impairments in step 2, including the following:

3        He also testified that he has not had any mental health treatment, including both
         therapy and medication, for over one year. . . .
4
         Treatment notes reflected that the claimant's depression was mild and controlled
5        with medication and stress management (18F/2; 20F/1-2; 25F/1-3; 27F1-2;
         30F/1,4; 33F/2; 42F/1, 3; 47F/1-3; 48F/1; 51F; 57F/1; 62F/18, 21, 28, 30, 32;
6        65F/10-11). In March 2022, it was noted that he denied exacerbations and suicidal
         ideation, he was overall doing well, he denied side effects of medication, he was
7        currently working and physically active, which helped with depression relief, and
8        he had a normal mood and affect (42F/1-2). . . .

9        Claimant also reported being able to cook, prepare sandwiches, use the
         microwave, and shower; being on the Dean's list in school and not being in special
10       education (45F/3).

11

12 (A.R. 22).

13       The ALJ also addressed Plaintiff's symptom testimony regarding his headaches as

14 follows:

15       Although the claimant has alleged daily/weekly headaches (42F/1), primary care
         notes consistently reflect that claimant is in no acute distress or no distress and
16       well appearing at appointments through the period at issue (1F/2; 42F/2; 61F/126;
         62F/17; 65F/10)  . . .
17
         In contrast, the claimant rarely saw a neurologist and when he did, his complaints
18       were minimal (8F/1).  He also declined treatment offered to him on multiple
         occasions (see e.g. 62F/18, 21; 65F/15). . . . Recent treatment notes show a
19       recommendation for Botox, which he has not even tried yet (65F/15).

20 (A.R. 24).

21       Plaintiff argues that these reasons are legally insufficient because "[f]irst, the ALJ

22 harmfully erred by failing t [sic] address that Mr. Flocchini's specific testimony that he suffers

23 from "mood swings."  (ECF No. 16, p. 31).  Plaintiff then cites certain testimony that Plaintiff

24 believes the ALJ failed to adequately summarize, including that "when I get in my moods it's

25 hard for them to be around me because I'm just—I get so frustrated and angry because I feel like

26 I've been robbed because I had no—my neck was fine.  I didn't have nothing going on with my

27 neck, it was my head was the problem.  And, I don't know, I just feel like I'm getting robbed. . .. I

28 just get in a sh*t mood."  (ECF No. 16, p. 31, summarizing testimony at A.R. 54).

15

1   The Court finds no legal error in the ALJ failing to summarize this testimony in particular.

2   The ALJ's summary of Plaintiff's testimony, cited above, was accurate and the ALJ noted places

3   where that testimony contradicted other evidence in the record in making its finding.  The Court

4   is not aware of any requirement that an ALJ to summarize every aspect of a Plaintiff's testimony.

5   Plaintiff next argues that "the ALJ fails to discuss or address how a person suffering from

6   MDIs of psychological impairments stemming from pain disorder which have rendered him 'anti-

7   social,' to the extent he is unable to be around his own family; is unable to perform ADLs due to

8   anger and frustration, stemming from unabated physical pain and limitations; spends most of his

9   day lying down due to side effects of migraine medication and pain; and cannot avoid curse

10  words during a formal court procedure could sustain normal work activity eight hours a day, five

11  days a week." (ECF No. 16, p. 33).  However, this argument does not address the ALJ's findings

12  regarding Plaintiff's subjective symptom testimony.  Instead, it appears to be a summation of

13  Plaintiff's general argument that the ALJ's opinion is unsupported by substantial evidence.  The

14  Court disagrees, as explained above.

15  **II.    CONCLUSION AND ORDER**

16  Based on the above reasons, the decision of the Commissioner of Social Security is

17  affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social

18  Security and to close this case.

19
20  IT IS SO ORDERED.

21  Dated:   **September 12, 2025**                    /s/ _Erica P. Grosjean_
22                                                            UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28